UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TANYA L. CHAMBERLAIN,

    Plaintiff,

    v.

    Case No.: 2:15–CV–1335
    JUDGE SMITH
    Magistrate Judge Jolson

CARDINAL HEALTH, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court upon the Motion for Summary Judgment of Defendant Cardinal Health 200, LLC (Doc. 41). Plaintiff opposed Defendant's Motion (Doc. 42) and Defendant replied in support (Doc. 44). The Motion is now ripe for review. For the following reasons, Defendant's Motion is **GRANTED**.

### I.    BACKGROUND

This case arises from the former employment relationship between Tanya Chamberlain ("Plaintiff") and Defendant Cardinal Health 200, LLC ("Cardinal"). (Doc. 3, Compl. at 2). Plaintiff began working at Cardinal in 2006 and resigned in 2013. (*Id.*). This case specifically revolves around Plaintiff's two attempts to obtain a promotion to a Senior Analyst position in the Inventory Management group, Plaintiff's attempts to work from home, and Cardinal's selection of another employee for a special project.

Plaintiff, a forty-seven year-old African-American woman, began her career with Cardinal in 2006 as a Collection Coordinator, then moved to a role as a Senior Inventory Coordinator in 2009. (Doc. 56, Pl.'s Dep. at 30). After a period in the Senior Inventory

Coordinator role, Plaintiff sought a promotion to the Senior Analyst position within the same division.  Plaintiff met with her supervisors, and former defendants, Jansen Plesich ("Plesich") and Raul Amado ("Amado") to discuss how she could advance her career.[1]  (*Id.* at 34–36).  Amado and Plesich told Plaintiff that she needed to work on her technical skills and that she needed to make fewer errors.  (*Id.*).  As a result of this advice, Plaintiff took one class offered by Cardinal on the use of Microsoft Excel.  (*Id.*).

Plaintiff applied for the Senior Analyst position in both 2012 and 2013.  (*Id.* at 38–39).  The position required a bachelor's degree or equivalent experience.  (Doc. 56-14, Senior Analyst Job Description at PAGEID# 472–73).  Plaintiff does not allege that she possesses either of those requirements, but does note that she was a trainer in her department, that she had performed the Senior Analyst duties while another employee was on maternity leave, and that Cardinal thanked her for her work during that period.  (Doc. 42, Mem. Opp. at 7–8).  In 2012, Plesich sat down with Plaintiff and told her that she did not receive an interview because she had errors in her resume.  (*Id.* at 39).  Plesich helped Plaintiff re-format her resume but did not point out any specific errors.  (*Id.* at 39–40).  The job was awarded to Honor O'Brien, a white Cardinal employee.  (*Id.* at 41).  Plaintiff applied again in 2013 with the updated resume and received an interview.  (*Id.*).  Plesich and two other Cardinal employees interviewed Plaintiff but did not select her.  (*Id.*).  Plaintiff does not know who was selected instead of her.  (*Id.*).

Plaintiff alleges that she was subject to a racial slur from Amado at some point during her employment at Cardinal.  (Doc. 42, Mem. Opp. at 4).  A Cardinal employee told Amado he looked different because Amado was growing a goatee.  (*Id.*).  Amado waited until he passed the Plaintiff's cubicle then told the other employee that he was "being ghetto this week."  (*Id.*).

---

[1] Plesich and Amado were dismissed from this action on November 23, 2015.  (*See* Doc. 34, Op. and Order).

2

Plaintiff called the Cardinal employee hotline to report Amado's comment and sent an email to Amado's management and human resources. (Doc. 56, Pl.'s Dep. at 57–58). Amado apologized to Plaintiff and told her that he did not mean anything by his comment. (*Id.* at 58). Plaintiff did not believe his apology to be sincere. (*Id.*).

Plaintiff also had problems when she attempted to work from home when she had a foot injury in March 2013. (*Id.* at 65). Plaintiff emailed Debbie Kincaid, a human resources supervisor, indicating that Plaintiff had been trying to work from home for about a month. (Doc. 42-1, Ex. 16 to Pl.'s Mem. Opp. at PAGEID# 303). Plaintiff worked with the information technology department ("IT") to get her computer working on multiple occasions, which ultimately resulted in IT rebuilding her computer. (Doc. 56, Pl.'s Dep. at 62–63). In June 2013, Plaintiff noted that she was able to access Cardinal's system from home. (Doc. 42-1, Ex. 16 to Pl.'s Mem. Opp. at PAGEID# 306). Plaintiff did not attempt to work from home once she was able to access Cardinal's system. (Doc. 56, Pl.'s Dep. at 64).

Last, Plaintiff argues that she did not have the opportunity to work on a special Cardinal project called the Zupo Query Project ("Zupo Project"). (*Id.* at 66). Plaintiff was interested in the Zupo Project because it concerned supply planning and involved Cardinal employees from out of state. (*Id.*). Plaintiff does not know how Cardinal selected employees for the Zupo Project, but Melissa DiMaria, one of Plaintiff's less-tenured co-workers, was selected and expressed confusion to Plaintiff as to why she was selected. (*Id.* at 67). Plaintiff did not recall the duration of the Zupo Project or if participants received additional compensation, but she noted that DiMaria did not enjoy her participation. (*Id.* at 68–69).

Plaintiff gave notice of her resignation on July 31, 2013, because she was upset about not being promoted and felt that she was being micromanaged. (*Id.* at 70–72). Plaintiff worked for

two more days before leaving permanently on August 2, 2013. (*Id.* at 72). Plaintiff alleges that she was receiving dirty looks from the managers and felt that she just could not stay at Cardinal. (*Id.* at 72–73). Plaintiff filed a charge with the EEOC and received a right-to-sue letter dated January 27, 2015. (Doc. 3, Compl. at 5). Plaintiff then brought this action on April 17, 2015, alleging race discrimination. (*Id.*).

## II.  STANDARD OF REVIEW

Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant

4

must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

### III. DISCUSSION

Plaintiff brings claims of racial discrimination based on three discrete acts: (1) Cardinal failed to promote Plaintiff to the Senior Inventory Analyst position; (2) Cardinal would not allow Plaintiff to access its systems to work from home; and (3) Cardinal did not select Plaintiff for the Zupo Project. Plaintiff also notes that Amado made a racially based comment to her when he stated that he "was being ghetto" when he had more facial hair than he normally did.

Plaintiff may prove that she was subject to racial discrimination in violation of Title VII using either direct or circumstantial evidence. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Plaintiff's evidence of Amado's comment does not constitute evidence of direct discrimination. Direct evidence of employment discrimination is evidence "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003) (quoting *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000)). "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *LaPointe v. UAW Local 600*, 8 F.3d 376, 379–80 (6th Cir. 1993)). Amado's single comment—that is not alleged to have been stated around or near the

5

time of any alleged adverse action—is insufficient to give rise to the conclusion that race was "at least a motivating factor" in Cardinal's decisions regarding Plaintiff's employment.

When there is no direct evidence of discrimination, claims of race discrimination can be proven under the *McDonnell Douglas* burden shifting framework. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972)); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). It is a plaintiff's burden "to establish a *prima facie* case of discrimination." *Id.* If a plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *McDonnell Douglas*, 411 U.S. at 802. If the defendant articulates such a reason, "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant . . . were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804). The Court will examine each of Plaintiff's three claims of discrimination under the *McDonnell Douglas* framework.

**A.     Failure to Promote**

The *prima facie* case for a claim of failure to promote due to race discrimination consists of four elements: (1) Plaintiff is a member of a protected class; (2) she applied for and was qualified for promotion; (3) she was considered for and denied the promotion; and (4) an individual of similar qualifications outside of the protected class received the job. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). Where a plaintiff "cannot adduce any evidence establishing that [she] possessed qualifications similar to those of the people identified by them as being promoted at their expense," the district court does "not err in granting summary

6

judgment to the defendants on the plaintiff['s] failure-to-promote claims." *Woods v. Facility Source, LLC*, 640 F. App'x 478, 488 (6th Cir. 2016).

In *Woods*, one of the plaintiffs sought a more senior position which required a bachelor's degree and two to three years of relevant experience. *Id.* at 487. The plaintiff did not have a have a high school diploma. *Id.* Rather, the plaintiff pointed to two other employees who he claimed did not have bachelor's degrees. *Id.* The Sixth Circuit found that plaintiff could not provide evidence that the other employees lacked the necessary credentials for the positions they achieved, and thus, that summary judgment on the plaintiff's failure-to-promote claim was appropriate. *Id.* The instant case shares numerous similarities.

Defendant argues that Plaintiff was not qualified for the Senior Inventory Analyst position because she did not have a bachelor's degree or equivalent experience. Plaintiff argues that she met the requirements to "at least . . . get an interview." Defendant provided a job description of the "Sr Analyst, Inventory Management" position, noting the following qualifications: "Bachelor degree, or equivalent experience; 2 - 3 years experience; Proficient in Microsoft Office; Excellent communication and interpersonal skill." (Doc. 56-14, Senior Analyst Job Description at PAGEID# 472–73). Plaintiff directs the Court to a printout of a "Cardinal Health Career Opportunities" policy that states three requirements for promotion: (1) discussion with a supervisor; (2) one year of experience in the employee's current job; and (3) meeting a certain standard for performance evaluations and avoiding performance improvement plans. (Doc. 42-1, Ex. 13 to Mem. Opp. at PAGEID# 298). Plaintiff's exhibit is clearly incomplete as it does not include the first page of the document. (*Id.* (noting "Page 2 of 2")). Further, the printout contains general requirements for Cardinal career advancement as the document makes no reference to the specific job sought by Plaintiff. (*Id.*). Last, while Plaintiff

may meet these general requirements, she does not allege that these were the sole requirements for the job, nor does she deny that a bachelor's degree or equivalent experience were required for the position she sought.

Next, Plaintiff points to two other Cardinal employees, Tammy Castle and Kristin Randles, who received promotions but did not have college degrees. (Doc. 42, Mem. Opp. at 7). While this may be evidence that a college degree is not required to obtain any promotion at Cardinal, there is no proof that Castle and Randles received promotions to jobs which required college degrees. Further, even assuming the promotions obtained by Castle and Randles required college degrees or equivalent experience, Plaintiff makes no allegation that Castle or Randles lacked equivalent experience. Last, Plaintiff admits she had no college degree and submits no evidence or argument that she had experience equivalent to a college degree. Plaintiff's Certificate of Thanks, her experience as a temporary fill-in for the Senior Analyst job, and her time as a trainer do not establish that she had experience equivalent to a college degree as a matter of law. Plaintiff does not argue that she met the minimum qualifications for the position and thus cannot set forth a *prima facie* case of failure to promote for the Senior Analyst positions. Thus, based on *Woods*, summary judgment is appropriate in favor of Defendants on Plaintiff's failure to promote claim. *Woods*, 640 F. App'x at 488.

**B.** **Inability to Work from Home**

Next, Plaintiff claims that Cardinal would not allow her to work from home but allowed other employees outside of the protected class to do so. Cardinal alleges that this does not constitute an adverse action, and that even if it does, Plaintiff's inability to work from home was due to technical difficulties, not discrimination.

An adverse employment action is "a materially adverse change in the terms of her employment." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Although a

8

reassignment without salary or work hour changes is not normally an adverse action, it may be if it "constitutes a demotion evidenced by 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004), aff'd *sub nom.* 548 U.S. 53 (2006) (citing *Kocsis*, 97 F.3d at 886); *but see Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 300 (6th Cir. 2015) (shift change by one hour is not materially adverse).

District courts have consistently held that the inability to work from home generally does not constitute an adverse action. *See*, *e.g.*, *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 41 (D.D.C. 2013) (no adverse action where refusal of work-from-home request resulted in plaintiff losing seven and a half hours of pay); *Bright v. Copps*, 828 F. Supp. 2d 130, 148–49 (D.D.C. 2011) (no adverse action where employee's contract required employee to come to the office); *Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010) (no adverse action where plaintiff was denied work-from-home request three times); *Homburg v. UPS*, No. 05–2144, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) (requiring a plaintiff to come into the office does not constitute an adverse employment action and collecting cases); *Daniels v. Fed. Reserve Bank of Chi.*, No. 98–C–1186, 2006 WL 861969, at *12 (N.D. Ill. Mar. 31, 2006) (denial of employee's request to work from home while recuperating from surgery was not an adverse action under Title VII even where employees outside of the protected class were able to do so).

Plaintiff first emailed Kincaid on March 21, 2013, explaining that Plaintiff had been trying to work from home for about a month. (Doc. 42-1, Ex. 16 to Pl.'s Mem. Opp. at PAGEID# 303). Plaintiff told Kincaid that she had worked with Cardinal IT but that a computer rebuild and a new computer purchase did not solve her problem. (*Id.*). Plaintiff also provided an

9

email dated June 25, 2013, showing that she had access to Cardinal's servers from home. (*Id.* at PAGEID# 306). The evidence presented is similar to that in *Daniels*. Here, Plaintiff had a foot injury and wished to work from home but her attempts to do so were unsuccessful. Although other employees worked from home, Plaintiff has not alleged facts sufficient to show an adverse action. Plaintiff had never worked from home before she attempted to do so in 2013, meaning this was not a right that was taken away or consistently denied. Simply, denial of Plaintiff's ability to work from home, even if intentional, is not an adverse action sufficient to support a *prima facie* case of race-based discrimination.

### C. Zupo Query Project

Last, Plaintiff argues that Cardinal's choice of Melissa DiMaria for the Zupo Project instead of Plaintiff was discriminatory. Defendant argues Plaintiff cannot make out a *prima facie* case of discrimination because Plaintiff has no evidence that she was qualified for the Zupo Project or that a person outside of her protected class was selected despite having similar or qualifications.

The Sixth Circuit has no set standard for evaluating alleged discrimination from an employer's choice of another employee for a special project. Some courts have used a disparate treatment analysis, finding that a plaintiff must show that the failure to obtain the assignment is an adverse action. *See, e.g.*, *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 199 (D. Mass. 2009) (noting that assignment brought no additional compensation, changes of title, or promotions . . . ."). Other courts have found that failure to obtain a special assignment should be analyzed under a failure to promote framework, requiring the plaintiff to show she applied for and was qualified for the project, she was considered for and denied the opportunity, and an individual of similar qualifications outside of the protected class received the opportunity. *Belton v. City of Charlotte*, 175 F. App'x 641, 655 (4th Cir. 2006) (finding plaintiff could not

establish a *prima facie* case because he provided no evidence that he was qualified for the opportunity or that employees outside of his class in similar circumstances were given such opportunities); *Haney v. United Airlines, Inc.*, No. 15-CV-00474, 2016 WL 80554, at *2 (N.D. Cal. Jan. 7, 2016) (using failure-to-promote framework in analyzing a plaintiff's inability to obtain special assignments); *Baltzer v. City of Sun Prairie/Police Dep't*, 725 F. Supp. 1008, 1027 (W.D. Wis. 1989) ("the considerations in promotion cases are sufficiently similar to those in plaintiffs' assignment claim to make it appropriate to use for this case the *prima facie* elements courts have developed in promotion cases.").

However, under either framework, Plaintiff's claim fails due to a lack of evidence. Plaintiff's argument and evidence in this section consists of an allegation that she emailed Kincaid regarding her non-participation once the Zupo Project had already ended.  Plaintiff presents no evidence that she knew of the Zupo Project in order to apply for it, that she was qualified for the Zupo Project, or that a less-qualified individual was selected instead of her.  In fact, Plaintiff does not provide any evidence regarding the requirements, benefits, or purposes of the Zupo Project.  Although Plaintiff does note that Melissa DiMaria worked on the Zupo Project and had less experience than Plaintiff, there is no evidence that DiMaria was unqualified or less qualified for the specific needs of the Zupo Project.  Additionally, Plaintiff has presented no evidence that non-participation on the Zupo Project constituted an adverse action.  There is no evidence that participation in the Zupo Project brought extra compensation, prestige, or advancement opportunity.  For these reasons, the allegations regarding the Zupo Project cannot form the basis of a claim of discrimination.

## IV. CONCLUSION

Based on the foregoing, Cardinal's Motion for Summary Judgment is **GRANTED**. The Clerk shall **REMOVE** Document 41 from the Court's pending motions list. The Clerk shall **ENTER** final judgment in favor of Cardinal and **REMOVE** this case from the Court's pending cases list.

**IT IS SO ORDERED.**

                                              **/s/ George C. Smith**
                                              **GEORGE C. SMITH, JUDGE**
                                              **UNITED STATES DISTRICT COURT**